**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HIGH WEST CAPITAL PARTNERS, LLC, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 1:25-cv-04335 |
| | : | |
| GREENBERG & LIEBERMAN, LLC, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT GREENBERG & LIEBERMAN, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

PRELIMINARY STATEMENT OF LAW ......................................................................... 2

    I.    Plaintiffs have not sufficiently plead the citizenship of the LLCs to affirmatively establish subject matter jurisdiction. .............................................................................................. 2

    II.   Plaintiffs' Motion acknowledges the amount in controversy of this diversity jurisdiction case does not meet the $75,000 threshold. ............................................................................ 3

FACTUAL BACKGROUND ............................................................................................... 5

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ....................................................................................................................... 8

    I.    The Parties mooted the Motion for Preliminary Injunction through agreement ................. 8

    II.   Plaintiffs requested injunctive relief would alter the status quo. ....................................... 9

    III.   Plaintiffs' Declaratory Judgment claim cannot form the basis of the relief requested in the Motion for Preliminary Injunction. .................................................................................. 10

    III.   Plaintiffs have not satisfied any element to warrant a preliminary injunction under Count II: Breach of Fiduciary Duty. ........................................................................................... 12

        A.   Plaintiffs are not likely to succeed on the merits of this claim. .................................... 12

            1.   High West authorized G&L to conduct overnight sweeps and charge Plaintiffs for bank fees. ................................................................................................................. 13

            2.   G&L maintained proper accounts and did not commingle funds. ........................... 15

        B.   Plaintiffs have established no actual or imminent threat of irreparable harm. ............. 16

            1.   Plaintiffs cite only speculative, theoretical economic harms. .................................. 16

            2.   There are no facts to suggest that speculative harms asserted by Plaintiffs threaten the existence of their business. ........................................................................................ 19

            3.   The evidence cited by Plaintiffs in support of reputational harm is unequivocal that Jaber is the only party who has harmed High West's business reputation. ...................... 20

        C.   The equities and public interest favor G&L. ............................................................... 21

CONCLUSION .................................................................................................................. 24

## TABLE OF AUTHORTIES

**Cases**

*Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)............................................................ 12

*AFGE v. Dist. of Columbia*, 2005 WL 1017877 at \*4 (D.D.C. May 2, 2005) ............................ 13

*Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)....................................................................... 11

*Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 242 (D.D.C. 2025) .......................... 11

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 132 (D.D.C. 2011)……………………………………………………………………………………....10

*Bronner v. Duggan*, 364 F. Supp. 3d 9, 17 (D.D.C. 2019) ............................................................. 5

*Buckeye Check Cashing, inc. v. Cardegna*, 546 U.S. 440, 444-446 (2006 ................................. 11

*C & E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ..................................................................................................... 3

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)..... 8, 16, 19

*Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004.................................................................... 8

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C.Cir.2009). ............................... 8

*Depu v. Oath Holdings, Inc.*, No. CV 17-635 (RDM), 2021 WL 4399528, at \*4 (D.D.C. Sept. 27, 2021) ....................................................................................... 17, 18, 21

*Diwan v. EMP Global LLC*, 841 F. Supp. 2d 246, 249 (D.D.C. 2012) ......................................... 9

*FutureGen Co. v. Carter*, No. CV 12-0716 (ABJ), 2012 WL 12874177, at \*1 (D.D.C. May 21, 2012) ....................................................................................... 20

*Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 179-80 (D.D.C. 2003) ......................... 2

*LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050, 1063 (D.C. Cir. 1992)............ 10

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir.1998)……………………...8

*McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 88 (D.D.C. 2009) ...................................... 4

*Obama v. Klayman*, 800 F. 3d 559, 565 (D.C. Cir. 2015) ........................................................... 3, 5

*Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) ....................................................... 9

*Sprint Solutions, Inc. v. Mobile Now, Inc.*, 2018 WL 136285 at *1 (D.D.C. Jan. 13. 2020)

....................................................................................................................... .…….17, 18, 24

*United States v. Philip Morris, Inc.*, 300 F. Supp. 2d 61, 74-75 (D.D.C. 2004) .......................... 22

*Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 23 (D.D.C. 2025 ........................... 12

*Wagman v. Lee*, 457 A.2d 401, 404-405 (D.C. 1983) ..................................................................... 5

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir.

1977) ........................................................................................................................................ 20

*Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) .................................... 16, 17, 19, 20

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................................ 3

28 U.S.C. § 2041 ........................................................................................................................... 10

28 U.S.C. § 2201(a) ...................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 67 .......................................................................................................................... 10

**INTRODUCTION**

Greenberg & Lieberman, LLC claims no ownership right to the escrow assets, and does not want to hold the assets disputed between John Hall and Paul Jaber. In that sense, a request to have these assets placed in the Court's registry is reasonable. What is not reasonable, however, is the scope of relief or the legal and factual basis by which Plaintiffs seek to enforce that relief. In the past two weeks, G&L consented to depositing as many of Plaintiffs' assets in the Court's registry as possible, effectively mooting the MPI. All that remains for the Court to decide is whether to order the liquidation of the encumbered securities in the Safari Asia Limited accounts managed by G&L (something Plaintiffs no longer request), and how to handle the three Safari Accounts not managed by G&L.

The dispute outlined in Plaintiffs' Motion for Preliminary Injunction is wholly divorced from the relief requested. Plaintiffs admit their claims against G&L boil down to less than $10,000 in charged bank fees and a declaration that an expired contract was, in fact, expired. All parties agree G&L has no ownership right to the escrow funds, and Plaintiffs have never suggested G&L did not have authority to hold those funds in escrow. Nonetheless, Plaintiffs ask the Court to force G&L to liquidate and transfer encumbered assets held in international accounts, which are presently the subject of the partnership dispute between Hall and Jaber.

Indeed, conspicuously absent from the MPI is any discussion of the pending litigation in Nevis and Florida between Hall and Jaber. As outlined in John Hall's Motion to Intervene (ECF 18), Hall has a legitimate claim to 50% of the ownership of the High West partnership. Jaber has admitted as much. ECF 1 at ¶ 11; ECF 18 at p. 5. However, in the MPI, Plaintiffs ignore those other lawsuits and continue to incorrectly assert that Paul Jaber is the sole partner of High West. ECF 17-1 at p. 23. The very foundation of Plaintiffs' MPI—and indeed Complaint—unravels upon

1

scrutiny of their false assertion of High West's ownership. For example, as 50% partner of High West, Hall authorized G&L to conduct overnight market investments and charge the partnership for the bank fees. By excluding Hall from this case, Plaintiffs (acting solely through Jaber) blindfolded the Court from the true nature of the High West partnership and distorted the G&L/High West relationship. The Court should deny Plaintiff's request for the extraordinary remedy of preliminary injunctive relief under these circumstances.

The MPI is an obvious attempt to circumvent the existing partnership disputes ongoing in Florida and Nevis. Operating only through one partner, High West asks the Court to force G&L to violate its duties owed to the whole partnership and liquidate stocks to which both partners have claimed an interest. Jaber is acting as a rogue partner without authorization from Hall. The MPI is, in effect, Jaber's attempt to short-circuit the declaratory judgment action in Nevis to get this Court to declare him as sole member of High West with sole interest in the disputed assets. The Court should decline to do so.

## PRELIMINARY STATEMENT OF LAW

**I.    Plaintiffs have not sufficiently plead the citizenship of the LLCs to affirmatively establish subject matter jurisdiction.**

As a threshold matter, Plaintiffs—each organized as a limited liability company under the laws of Nevis—must plead and, when challenged, establish the citizenship of every member of each LLC for purposes of diversity jurisdiction. An LLC "has the citizenship of all of its members." *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 179-80 (D.D.C. 2003). The Complaint does not identify the citizenship of the members of High West Capital Partners, LLC or International Liquidity, LLC, and instead flatly asserts that Mr. Jaber is the sole member and a domicile of South Carolina. Both the partnership structure of High West/International Liquidity and Mr. Jaber's domicile are hotly contested, and therefore have not been affirmatively established

2

for purpose of creating subject matter jurisdiction. *See* ECF 14-4; see also *High West v. Hall*, 25-cv062678 Motion to Stay or in the alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction, appended as Exhibit C (demonstrating that Hall is a High West partner and that both Hall and Jaber are citizens of Florida for purpose of diversity jurisdiction).

**II.    Plaintiffs' Motion acknowledges the amount in controversy of this diversity jurisdiction case does not meet the $75,000 threshold.**

As briefed in the MPI, before considering the merits of the injunctive relief requested, the Court must make a threshold finding on its jurisdiction to grant that relief. *Obama v. Klayman*, 800 F. 3d 559, 565 (D.C. Cir. 2015). Plaintiffs' MPI affirmatively establishes that the amount in controversy between Plaintiffs and G&L does not meet the $75,000 jurisdictional threshold of 28 U.S.C. § 1332(a):

(1)    There is no dispute that G&L has no ownership interest in the disputed escrow funds, so the sum of those assets is not "in controversy" between these parties. *See* Lieberman Declaration, appended as Exhibit A, at ¶ 2.

(2)    Plaintiffs admit that there is no actual case or controversy regarding their claim for declaratory judgment regarding the expired escrow agreement. The question of whether this claim is arbitrable is subject to other arbitration clauses in other contracts. ECF 6-1. Regardless, declaratory judgment actions do not independently imbue the Court with subject matter jurisdiction. *C & E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C.Cir.2002)

(3)    The only alleged "damages" suffered by Plaintiffs identified in the MPI were **$9,800** in expenses charged in G&L's invoices across 395 domestic and international wire transfers. ECF 17-1, p. 29.[1]

Plaintiffs blithely ask the Court to ignore the minimal amount in controversy, arguing that "[w]hether Plaintiff suffered economic injury from [the alleged breach of fiduciary duty] is beside the point." ECF 17-1, p. 36.[2] Plaintiffs are wrong. Whether they suffered economic injury from

---

[1] High West authorized G&L to charge the wire transfer fees. Exhibit A at ¶ 15.

[2] In fact, in Plaintiff's statement of jurisdiction, they merely allude to the diversity of citizenship between themselves, G&L, and Hall without a discussion of the specific citizenship of the partnership members or the amount in controversy. ECF 17-1 at p. 8.

the alleged breach of fiduciary duty goes directly to this Court's jurisdiction. Because it has "become[] apparent" that "the maximum conceivable amount in controversy was less than the jurisdictional minimum. The Court must dismiss the caser lack of subject matter jurisdiction." *McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 88 (D.D.C. 2009). Even if the Court declines to dismiss the case at this junction, preliminary injunctive relief is inappropriate under the circumstances of doubtful jurisdiction.

G&L anticipates that Plaintiffs will respond by asserting that the alleged $35 million in assets held by G&L are "in controversy" and sufficient to establish diversity jurisdiction. Plaintiffs are wrong, because there is no allegation that G&L has asserted a right to those assets (a fact they have conceded). Exhibit A at ¶ 2; ECF 17-1, p. 7. Even assuming Plaintiffs could demonstrate those assets are in controversy, if the Court grants the MPI and compels G&L to deposit those assets in the Court's registry, there is no doubt that the assets would cease to be in controversy between Plaintiffs and G&L because they would no longer be in G&L's possession. In either interpretation of the amount in controversy, the Court's granting of Plaintiff's requested relief would destroy subject matter jurisdiction under 28 U.S.C. § 1332(a).

To the extent Plaintiffs seek recovery of the income generated from the sweeps on High West's escrow accounts, this amount also falls well short of $75,000. *See* Exhibit B, Declaration of John Hall at ¶ 6. Regardless, as discussed in greater detail below, these sweeps were authorized by the High West partnership. *Id.* at ¶¶ 4-9 ("My partner Paul Jaber and I agreed to this fee and sweep structure many times over the course of the relationship primarily by G&L staff, and I consistently approved it on behalf of High West.")

Nor are Plaintiffs' claims punitive damages sufficient for Plaintiffs to meet their burden of demonstrating the $75,000 jurisdictional requirement. Under D.C. law, punitive damages may be

awarded for breach of fiduciary duty, but only if the conduct is fraudulent, willful, or reckless. *Wagman v. Lee*, 457 A.2d 401, 404-405 (D.C. 1983). Plaintiffs plead merely "[u]pon information and belief" that G&L "intentionally, knowingly, and willfully breached its fiduciary duty…." ECF 1 at p. 24. This caveated, unsupported legal conclusion is insufficient to carry Plaintiffs' burden. Indeed, all conduct alleged in the Complaint was authorized by High West, through Hall. *See* Exhibit B.

"[T]he 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction. *Obama* 800 F.3d at 565. This is a high burden on Plaintiffs. *Id.* at 564. Not only did they fall short of meeting that burden, but their MPI affirmatively proves that the dispute between Plaintiffs and G&L (to the extent that it exists at all) is over $9,800. While a good faith claim for an amount in controversy is sufficient to initially establish jurisdiction, *Bronner v. Duggan*, 364 F. Supp. 3d 9, 17 (D.D.C. 2019), the question on this MPI is whether Plaintiffs satisfied their high burden of establishing jurisdiction. *Obama*, 800 F. 3d at 565. That answer is no. Accordingly, the Court should deny Plaintiff's Motion on this threshold failing.

## FACTUAL BACKGROUND

Greenberg & Lieberman, LLC is a law firm that provided legal representation and escrow services to Paul Jaber, John W. Hall and their affiliated entities from approximately May 2021 through October 2025, managing approximately 145 distinct matters across more than twenty corporate vehicles. ECF 14-1, ¶¶ 4–5.

The economic relationship between Jaber and Hall is governed by a written agreement dated June 22, 2016 (the "Profit and Loss Participation Agreement" or "PLPA"), which expressly provides that (a) both Jaber and Hall "are to share in the profits/losses and expenses equally";

5

(b) Jaber holds a "50% claim to all profit/losses from High West Capital Partners" and Hall holds a "50% claim to all profit/losses from High West"; and (c) "High West cannot accept or incur any expense without BOTH parties agreeing." ECF 14-1, Ex. A-3; *see also* ECF 1 at ¶ 11. The PLPA controls the disposition of all profits, losses, and expenses generated by the High West business— the same business that generated the Disputed Assets now held in escrow.

G&L received conflicting instructions and assertions of authority from Jaber and his representatives, on the one hand, and Hall and his representatives, on the other, regarding the disposition of the Disputed Assets. Exhibit A, at ¶ 5; *see also* ECF 17-33 (describing one instance in which Hall authorized a disbursement but Jaber refuses to agree to that remittance). In light of these competing claims, the PLPA's mutual-consent requirement, and the Escrow Agreement's dispute-hold provision, G&L's position has been that it cannot unilaterally liquidate or distribute the Disputed Assets without exposing itself to a competing claim, inconsistent obligations, and potential liability to Hall. ECF 14-1 at ¶¶ 5–6.

G&L has not dissipated, transferred, converted, or encumbered any of the Disputed Assets, and it makes no claim to ownership of any of them. Exhibit A at ¶¶ 2, 16. Over the last five years, G&L has held and moved in excess of $106 million in matters for the High West client group. ECF 14-1, ¶ 2; Exhibit A at ¶ 2. At all times, the High West escrow accounts were maintained separately from G&L's own operating accounts and from any funds belonging to G&L's other clients. Exhibit A at ¶ 12. No High West escrow funds were transferred to or mixed with G&L's own funds except when amounts needed to be wired out of the corporate account to allow for both larger wires and greater speed of transaction and again, only at the direction of Jaber and Hall. *Id.* No High West escrow funds were mixed with funds belonging to any other G&L client. *Id.* The only funds in the High West escrow accounts were funds related to the High West enterprise,

deposited at the direction of Jaber and Hall. *Id.* G&L maintained records sufficient to identify the source, ownership, and disposition of funds within the High West escrow accounts at all relevant times. *Id.* The accounts were maintained as dedicated escrow accounts for the benefit of the High West client group, consistent with G&L's obligations as escrow agent and with applicable professional responsibility standards. *Id.*

On February 26, 2026—three weeks before the filing of the instant motion—Hall filed a declaratory judgment action in the Eastern Caribbean Supreme Court, Nevis Circuit, seeking a declaration that he is the 50% owner of High West Capital Partners, LLC, International Liquidity, LLC, and Long GF1 Partners, LLC, and the assets generated by those entities. ECF 14-4, *Hall v. Jaber et al.*, Claim No. NEVHCV2026/0021 (E. Carib. Sup. Ct., Nevis Cir. filed Feb. 26, 2026). Hall's Nevis complaint asserts ownership over the same assets Plaintiffs compel G&L to distribute in this lawsuit. Any order of this Court directing distribution to Jaber would be entered in direct derogation of Hall's live pending claim in the court of the jurisdiction in which Plaintiffs are incorporated.

In January 2026, G&L was the victim of a cyberattack targeting cryptocurrency wallets held in connection with separate client escrow matters. G&L's own forensic investigation—documented in its Second Amended Verified Complaint in *Greenberg & Lieberman, LLC v. John Does 1–20*, No. 8:26-cv-00187-JRR (D. Md.)—established that the perpetrators did not access, view, or exfiltrate any data other than the cryptographic keys required to access the cryptocurrency through the compromised computer. ECF 17-9, ¶ 35. The cyberattack involved only cryptocurrency wallets and had no connection to the cash, stocks, or bonds that are the subject of Plaintiffs' MPI, which are held at entirely separate custodians and financial institutions. Exhibit A ¶ 17.

**LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citing *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir.1998) (internal quotations and citations omitted). "[T]he movant has the burden to show that all four factors ... weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C.Cir.2009).

**ARGUMENT**

**I.    The Parties mooted the Motion for Preliminary Injunction through agreement.**

Through status reporting and agreed orders entered by the Court, the parties have resolved the majority of Plaintiffs' Motion for Preliminary Injunction. G&L deposited the cash assets in Chase Account x6781. It agreed to do the same for the assets in Safari Asia Limited Accounts x0097 and x0197 and PNC Account x6854. The unencumbered non-cash assets in the Safari Accounts were identified and ordered to be liquidated and transferred to the Court. The remaining universe of assets over which Plaintiffs have moved for injunctive relief is minimal. First, Plaintiffs ask that the Court order the encumbered assets in Safari Accounts x0097 and x0197 deposited with the Court. However, Plaintiffs do not want any encumbered assets to be liquidated. As discussed below, G&L is not aware of a mechanism by which it can transfer stock interests to the Court's

8

registry without liquidation. In other words, Plaintiffs requested a relief that they now wish to retract, and this issue presented in the MPI has been mooted.

Second, Plaintiffs identify the assets in Safari Accounts x0014, x0214, and x0314 among their requested relief. As reported, these accounts are not in G&L's name, under G&L's client code, and therefore, not in G&L's control. ECF 23; Exhibit A at ¶ 18. Plaintiffs request that the assets in G&L's control—on the flawed basis that these assets are at risk of dissipation by G&L—be deposited with the Court for safekeeping. There is no factual or legal basis to compel G&L to deposit funds it does not control (and thus could not place at risk) as part of the requested injunctive relief. Therefore, no controversy exists between these parties with respect to Safari Accounts x0014, x0214, and x0314, and no injunctive relief can be granted. The Court should deny Plaintiffs' MPI as moot.

## II.      Plaintiffs requested injunctive relief would alter the status quo.

Mandatory relief that alters the status quo is "an even more extraordinary remedy" that "should be sparingly exercised." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012); *Diwan v. EMP Global LLC*, 841 F. Supp. 2d 246, 249 (D.D.C. 2012). Such relief is "particularly disfavored" because it "changes the status quo before the case is resolved on the merits." *Spadone*, 842 F. Supp. 2d at 301. For the reasons discussed in detail below, the Court should not issue this relief when Plaintiffs cannot make a showing of any factor favoring a preliminary injunction.

Granting the MPI would require G&L to liquidate contested assets held in Safari Asia accounts in Hong Kong. Compelling G&L to liquidate these contested securities and transfer cash would: (a) make irreversible, merits-dispositive moves in a dispute that is contractually committed to arbitration; (b) prejudice Hall, an admitted competing claimant who is not yet a party; and (c) expose G&L to duplicative liability from Hall's parallel Nevis proceeding.

9

Since filing the MPI, Plaintiffs (speaking only through Jaber) have indicated they no longer wish for any encumbered Safari assets to be liquidated to effectuate their deposit with the Court.[3] Plaintiffs request a legal impossibility. Under Rules Fed. R. Civ. P. 67 and 28 U.S.C. § 2041, the Court's registry is structed only to receive money, not equity positions. The registry has no infrastructure for holding, voting, receiving dividends from, or administering actively traded brokerage positions. As the D.C. Circuit has observed, Rule 67 "provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties [or rights] of the parties." *LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050, 1063 (D.C. Cir. 1992).

Because the Court lacks the authority to hold non-liquid assets, Plaintiffs' request that the Safari portfolios be transferred to the Court necessarily calls for a change to the status quo. Apparently, despite requesting as much as injunctive relief, Plaintiffs do not actually want to liquidate these assets. Plaintiffs fall well short of their burden to justify a change to the status quo in seeking this MPI relief.

### III.    Plaintiffs' Declaratory Judgment claim cannot form the basis of the relief requested in the Motion for Preliminary Injunction.

In Count I: Declaratory Judgment, Plaintiffs invoke 28 U.S.C. § 2201(a) to ask that the Court find that the expired escrow agreement does not contain an enforceable arbitration clause between the parties. This claim presents no controversy to the Court, and thus imbues the Court with no jurisdiction. *See generally, Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 132 (D.D.C. 2011) (discussing that declaratory relief must present an actual case or controversy for the Court to exercise subject matter jurisdiction.). As briefed in

---

[3] The unencumbered assets in the Safari Asia accounts are minimal and were identified to the Court in the parties' March 27, 2026 Joint Status Report. ECF 23.

G&L's Motion to Compel Arbitration, the applicable arbitration clauses between G&L and Plaintiffs are found in the attorney-client agreements between the parties. ECF 6-1. The applicability of the arbitration clause in the expired escrow agreement is immaterial to this case. Even if Count I did present an actual case or controversy, the question of whether the escrow agreement is expired or enforceable is one for the arbitrator, not this Court. *Buckeye Check Cashing, inc. v. Cardegna*, 546 U.S. 440, 444-446 (2006); *see also* ECF 6-1 at p. 11.

Plaintiffs' argument that their likelihood of success on their claim for declaratory judgment automatically warrants granting their MPI is wrong on two additional points. First declaratory judgment is a **remedy**, not a cause of action. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (quoting *C & E Servs., Inc.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (holding that it is a "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right." (internal quotations omitted)). Put another way, granting declaratory relief is not legally comparable to achieving success on the merits of a cause of action. Plaintiffs' position that their declaratory judgment request constitutes a distinct claim or cause of action is divorced from both the arbitrability dispute and hornbook law concerning declaratory judgment.

Second, even if the declaratory judgment relief constituted a cause of action, Plaintiffs still bear the burden of satisfying all other factors to obtain preliminary injunctive relief. *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 242 (D.D.C. 2025). As discussed in detail below, Plaintiffs have not—and cannot—demonstrate a likelihood of irreparable harm, a favor of the equities, or a public interest. Plaintiffs' suggestion that this frivolous declaratory judgment action somehow warrants the relief requested in their MPI should be rejected outright.

11

**III.    Plaintiffs have not satisfied any element to warrant a preliminary injunction under Count II: Breach of Fiduciary Duty.**

**A.    Plaintiffs are not likely to succeed on the merits of this claim.**

Putting aside their failure to demonstrate that this Court has jurisdiction to resolve this dispute, Plaintiffs otherwise fail to meet their burden that they are likely to succeed on the merits of this case. Indeed, the only way to reach that conclusion is to accept as true the heavily disputed allegation that Jaber is the sole member and manager of the partnership. Given Jaber's recent, unequivocal admission to the contrary (ECF 18-1, Jaber: "I fully understand we are 50/50 partners"), and that this dispute should be resolved in the appropriate forum, this Court should decline to short-circuit the partnership dispute and make that finding at this time.[4]

Plaintiffs incorrectly argue that this Court continues to evaluate the four injunctive relief factors on a sliding scale. ECF 17-1 at 19. Rather, "[t]he D.C. Circuit has [] repeatedly suggested that this 'sliding scale approach does not remain good law….'" *Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 23 (D.D.C. 2025) (collecting cases). The question of whether the plaintiff is substantially likely to succeed on the merits is "the first and most important" of the factors. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014).

Plaintiffs cannot put forth credible evidence to demonstrate substantial likelihood of success on the merits on any alleged claim of breached fiduciary duty arising from (1) alleged misuse of Plaintiffs' funds; (2) allegedly maintaining improper trust accounts; (3) allegedly commingling funds. For each of these three categories, Plaintiffs must prove three elements: the existence of the duty, breach, and a proximate causation connecting the breach and the damages.

---

[4] As Plaintiffs acknowledge in their MPI filing, parties conducting business with High West also understood the entity to be a 50/50 partnership between Hall and Jaber. ECF 17-33 ("It is BMA's understanding that High West is owned by both Jaber and Mr. John Hall.").

G&L does not contest that it owed a fiduciary duty to Plaintiffs as attorney and escrow agent. However, Plaintiff fails to satisfy the other two elements.

### 1. High West authorized G&L to conduct overnight sweeps and charge Plaintiffs for bank fees.

There is no credible factual basis for Plaintiffs' argument that G&L misappropriated funds by placing them in overnight markets "without Plaintiffs' knowledge or consent." ECF 17-1. John Hall, as 50% owner and managing partner of High West, authorized G&L's practice of overnight sweeps. Exhibit B at ¶¶ 1-2, 4. The income yielded from the sweeps "would be retained by G&L as part of its compensation in lieu of charging additional hourly fees for the time on the telephone and other time spent on High West's behalf." *Id.* at ¶ 4. Indeed, High West used the G&L sweeps to evaluate the potential of lucrative alternative locations to invest funds. *Id.* **Not only did High West authorize this practice, but Paul Jaber was aware of and assented to it.** *Id.* at ¶ 9. ("My partner Paul Jaber and I agreed to this fee and sweep structure many times over the course of the relationship primarily by G&L staff, and I consistently approved it on behalf of High West.")

As Plaintiffs briefed, a key element of demonstrating the misappropriation of funds is that the use of those funds was "unauthorized." *In re Alexander*, 865 A.2d 541, 543 (D.C. 2005) (quoting *In re Berryman*, 764 A.2d 760, 768 (D.C. 2000)). Here, Plaintiffs cannot demonstrate a likelihood of success on the merits for this cause of action, because the sweeps practice was authorized by both Hall and Jaber. Exhibit B at ¶ 9.

In reviewing the MPI, the Court may consider "sworn declarations in the record and other credible evidence." *AFGE v. Dist. of Columbia*, 2005 WL 1017877 at *4 (D.D.C. May 2, 2005). The only evidence Plaintiffs put forth to suggest that the sweeps were unauthorized is the Complaint. ECF 1 at ¶ 41. Mr. Jaber's (uncorroborated) verification of the Complaint should not be treated as credible for purpose of resolving this MPI, considering that a central allegation in

13

that Complaint—that he is the sole partner of High West—is at odds with a position he took mere weeks before filing. *See* ECF 18 at p. 5 (Jaber: "I fully understand we are 50/50 parters"). On the other hand, Hall and Lieberman have corroborated G&L's authority to conduct the sweeps. *See* Exhibits A and B.

Beyond the conclusory allegation that the overnight sweeps "put[] those escrowed assets at market risk," Plaintiffs fail to identify any lost value to those assets as a result of the investments, and therefore failed to identify any injury. ECF 17-1 at p. 25. This failure is conspicuous, considering Plaintiff possesses the bank statements and appended them to the MPI. In sum, Plaintiffs' misappropriation claim is based upon the false premise that G&L lacked authority to conduct the overnight investment sweeps, and resulted in no damages to Plaintiffs, regardless. They have not met their burden to show a substantial likelihood of success on the merits on this issue.

Nor have Plaintiffs demonstrated a likelihood of success on their claim that G&L was not authorized to charge bank fees (totaling less than $10,000). Again, accepting Plaintiffs argument requires the Court to accept the false—or at best, highly contested—premise that Jaber was the 100% manager and owner of the High West partnership. The partnership agreement (ECF 14-1, Ex. A-3); the Hall Declaration (Exhibit B), Hall's Motion to Intervene (ECF 18), the Nevis litigation (ECF 14-4), the course of dealings with G&L during the partnership (ECF 14-1; Exhibit A), and the course of dealings with other business partners (ECF 17-33) all contradict Jaber's bare assertion of ownership.[5] Regardless, Plaintiffs have not demonstrated a likelihood of success on

---

[5] BMA Capital, Inc. sued Jaber, individually, for refusing to authorize payment on behalf of High West, despite Hall (as 50% partner) granting that authority. ECF 17-33. As BMA observed, "instead of authorizing a simple payment and working with Hall and G&L to resolve any monetary issues, Jaber decided to launch an assault on both Hall and G&L…." *Id.* at pp. 1-2.

this issue because Hall authorized the minimal bank fees on behalf of the High West partnership. Exhibit A at ¶ 15.

### 2.    G&L maintained proper accounts and did not commingle funds.

Plaintiffs cannot demonstrate a likelihood of success on the merits for their remaining fiduciary duty claims because the evidence demonstrates G&L maintained proper trust accounts and that Plaintiffs suffered no injury related to the maintenance of trust accounts. In support of this claim, Plaintiffs cite to the Chase x6781 account, which they contend does not include the label "Trust Account" or "Escrow Account." ECF 17-1 at p. 36. First, the funds in the Chase x6781 account were part of G&L's consent to the relief requested and have been deposited with this Court. This issue is therefore moot. ECF 19, 21. Second, G&L's practice of maintaining the escrow assets on behalf of the High West enterprise was done at the direction of Jaber and Hall. Exhibit A ¶¶ 11-12.

Likewise, the High West accounts were maintained separately on behalf of the clients within the High West partnership enterprise—they were not commingled with any funds belonging to G&L or unrelated clients. Exhibit A at ¶ 12. The only funds in the identified accounts were those related to the High West enterprise, dedicated for the benefit of the High West client group. *Id.* This was also done at the direction of Jaber and Hall, consistent with their management of the High West entities as part of one single enterprise. Exhibit A ¶ 11; ECF 14-1. With respect to the maintenance of proper, separate trust accounts, Plaintiffs have not demonstrated a likelihood of success on the merits.

Regardless, as Plaintiffs admit, there are no monetary damages related to either of these alleged breaches. ECF 17-1 p. 36. Under Count II: Breach of Fiduciary Duty, Plaintiffs fail to set forth evidence demonstrating a likelihood of success on the merits because all actions undertaken

15

by G&L were authorized by the High West partnership, and no damages were suffered by High West in the course of those dealings. Therefore, preliminary injunctive relief is inappropriate.

**B.      Plaintiffs have established no actual or imminent threat of irreparable harm.**

This jurisdiction "has set a high standard for irreparable injury," which includes a demonstration that the potential injury is both **imminent** and **actual**. *England*, 454 F.3d at 297 (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (*per curium*)). "It is … well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisc. Gas Co.*, 758 F.2d at 674. "A movant's failure to show any irreparable harm is [] grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *England*, 454 F.3d at 297.

As a preliminary matter, Plaintiffs lack credibility in claiming the likelihood of imminent harm. They waited four months after filing this case and one month after responsive briefing began to suddenly seek relief over allegedly emergent conditions that have existed since November 2025. In fact, the Complaint itself raises almost identical arguments as the MPI, even including an analysis of the preliminary injunction factors. ECF 1 at ¶ 50. The mere fact that Plaintiffs waited four months after first forecasting their desire for a preliminary injunction disproves any notion of imminent injury.

**1.      Plaintiffs cite only speculative, theoretical economic harms.**

Plaintiffs' primary argument that they will suffer imminent harm from G&L's management of their assets is based upon a misreading of a lawsuit concerning unrelated assets and accounts. The cryptocurrency fraud complained of in G&L's Maryland action is irrelevant to this case. Exhibit A at ¶ 17. Indeed, Plaintiffs tacitly acknowledge this reality by admitting that they have never been informed of High West assets being compromised or implicated in that cyber-attack. *See* ECF 17-1 p. 38. Reference to the Maryland lawsuit is a red herring: the cyberattack creates no

basis for preliminary injunctive relief directed at the escrow assets at issue. Plaintiffs put forth no allegation or argument that the assets held in the Chase or Safari accounts are or were under threat of dissipation as a result of this lawsuit—because they cannot. Exhibit A at ¶ 17. G&L has not and will not dissipate these assets. *Id.* Indeed, G&L has agreed twice to consent Orders prohibiting the dissipation of these assets. *See* ECF 22, 23. Plaintiffs merely conclude (without factual basis) that thieves **could** steal access to the escrow assets. ECF 17-1 at p. 38. The law sets a much higher standard of irreparable injury than "bare allegations," such as these. *See Wisc. Gas. Co.*, 758 F.2d at 674 ("Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." (emphasis in original)). References to an unrelated lawsuit concerning unrelated assets held in unrelated accounts are insufficient to satisfy Plaintiffs' burden of demonstrating a threat of actual and imminent harm.

Moreover, Plaintiffs' reliance on *Sprint Solutions* to suggest that there is a "strong indication" of dissipation of assets in this case is misplaced. *See Sprint Solutions, Inc. v. Mobile Now, Inc.*, 2018 WL 136285 at *1 (D.D.C. Jan. 13. 2020). First, any concern about imminent dissipation has been resolved, and thus mooted, by this Court's order dated March 23, 2026 (to which G&L consented). ECF 22. Regardless, the *Sprint Solutions* case is inapplicable to these facts. As this Court observed, the finding in *Sprint Solutions* "was premised on the principle that 'monetary loss is an irreparable harm where the defendant would become insolvent or otherwise judgment-proof prior to the conclusion of litigation[,]…thus making the plaintiff's alleged damages unrecoverable.'" *Depu v. Oath Holdings, Inc.*, No. CV 17-635 (RDM), 2021 WL 4399528, at *4 (D.D.C. Sept. 27, 2021) (quoting *Sprint Solutions*, 2018 WL 136285 at *8 (internal quotations omitted)). Like in *Depu*, Plaintiffs here have made no showing (or even an argument) that G&L is at risk of insolvency or that damages would become unrecoverable. *Id.* at *4

17

(observing that it is insufficient to demonstrate a mere diminution in the value of the disputed assets). The *Sprint Solutions* case is further distinguishable because that dispute concerned two parties fighting over their respective claims to the same pot of money. 2018 WL 136285 at *8. Here, there is no question that G&L makes no proprietary claim to the escrow assets, nor is there a claim that G&L will have to pay the value of the assets as damages if Plaintiff's succeed on the merits. ECF 17-1 at p. 29 (acknowledging the monetary dispute between Plaintiffs and G&L is only $9,800).[6] In other words, this Court is not being asked to adjudicate competing claims of Plaintiffs/G&L to the escrow assets. As in *Depu*, Plaintiffs have failed to carry their burden of demonstrating imminent and irreparable injury warrant the extreme remedy of a preliminary injunction.[7]

Plaintiffs further argue that G&L's overnight sweep practice demonstrates additional risk of irreparable harm to these assets. This argument is baseless on three simple grounds. First, the sweeps were authorized by High West. Exhibit A at ¶ 13; Exhibit B at ¶¶ 4-9. Second, Plaintiffs admit G&L ceased the overnight sweeps in January 2026, two months before filing the MPI. ECF 17-1 at 39. G&L has no intent to resume that practice during this litigation. Exhibit A at ¶ 14.

---

[6] Indeed, G&L does not even have control over three of the accounts cited by Plaintiff in the MPI at ECF 17-22, 17-36, and 17-37. Exhibit A at ¶ 18. Plaintiffs cannot credibly argue a likelihood that G&L will dissipate assets in accounts that G&L cannot access or control (and, indeed, are not even under G&L's name or client number). *Id.*

[7] Plaintiff's argument that it will suffer irreparable harm if the funds are not deposited in the Court's registry because "not having access to the escrowed assets held by G&L has resulted in substantial lost business opportunities, reputational harm, and at least one lawsuit," is logically unsound. ECF 17-1 at p. 37. The relief requested by Plaintiffs is for the funds to be deposited in the Court's registry. If the Court grants the MPI, Plaintiffs will have no more access to the escrowed assets held by the Court than they did to the escrowed assets held by G&L. This flawed argument should have no bearing on the Court's evaluation of the relief requested in the MPI.

Regardless, before this lawsuit began, Jaber exposed High West to litigation by refusing to issue a cash loan to Jade Gas in exchange for stock holdings. *See* Exhibit D. Jaber has engaged in a pattern of breaching contractual duties, exposing High West to litigation, then blaming G&L for it. ECF 17-33, pp. 1-2 (alleging that "instead of authorizing a simple payment and working with Hall and G&L to resolve any monetary issues, Jaber decided to launch an assault on both Hall and G&L….").

Third, the Court instructed G&L to take no action with respect to the disputed assets in an Order to which G&L consented. ECF 22, 24. This issue is moot.

Next, Plaintiffs argue that fluctuations in the stock market demonstrate a likelihood of imminent harm in the value of these assets. This argument is speculative, at best. Stock prices fluctuate, by definition. The invested assets may decrease over time, then appreciate on a later date. Theoretical harm is not certain harm. *England*, 454 F.3d at 298 (quoting *Wisc. Gas Co.*, 758 F.2d at 674 (holding that "the injury must be both certain and great; it must be actual and not theoretical.")). Regardless, economic loss, without more, is not an irreparable harm justifying Plaintiffs' requested relief. *See id.* Plaintiffs' demand that these stocks and securities be liquidated after losing value in the stock market would only invite damages that they then could assert against G&L.

Finally, Plaintiffs resort to unrelated accusations about corporate formalities to suggest that they face a likelihood of imminent and actual economic harm. The only thing these arguments reveal is Plaintiffs' miscomprehension of escrow management. The assets G&L holds for High West in escrow are necessarily comprised of funds from multiple sources. *See* Exhibit A at ¶ 12. These were not funds held on retainer in an attorney IOLTA account, because these funds were not for the payment of legal fees. *Id.* Plaintiff's misunderstanding of the escrow management and mudslinging about business registration do nothing to meet the "high standard for irreparable injury." *England*, 454 F.3d at 297. Again, these allegations have been mooted by G&L depositing the Chase account funds with the Court's registry.

> **2.      There are no facts to suggest that speculative harms asserted by Plaintiffs threaten the existence of their business.**

Plaintiffs further assert that they will suffer irreparable harm because of lost business opportunities available to Jaber (a non-party) through his other, unrelated company BitBridge (a

non-party). ECF 17-1 at 40. However, a lost business opportunity for a non-party business does not meet the threshold to warrant preliminary injunctive relief. In arguing that the speculative lost business opportunities constitute irreparable harm, Plaintiffs correctly cite *Wisconsin Gas Co. v. FERC*, but the full version of that quote does not support their position: "[r]ecoverable monetary loss may constitute irreparable harm **only where the loss threatens the very existence of the movant's business**. 758 F.2d 669, 674 (D.C. Cir. 1985) (emphasis added) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). Plaintiffs have made no showing or argument that the existence of their business is threatened, only that it "has stalled." ECF 17-1. A mere stall in business is not a threat to its existence, and therefore does not meet the threshold of actual, imminent harm.

Nor is Plaintiffs' reliance on *FuterGen Company Center v. Carter* any more persuasive. Unlike here, the plaintiff's motion for preliminary injunction in *FutureGen* was unopposed, so the factual contentions in the motion were unchallenged. *FutureGen Co. v. Carter*, No. CV 12-0716 (ABJ), 2012 WL 12874177, at *1 (D.D.C. May 21, 2012). Regardless, FutureGen put forth actual evidence that it was currently suffering economic injuries (i.e. laying off employees). *Id.* at * 2. Here, Plaintiffs have only put forth argument that Jaber's launch of BitBridge "has stalled." ECF 17-1 at p. 40. In other words, Plaintiffs ask this Court to issue preliminary injunctive relief based upon slowed business development for a non-party entity. Again, speculative losses to a non-party entity do not constitute a substantial likelihood of irreparable harm.

> **3.    The evidence cited by Plaintiffs in support of reputational harm is unequivocal that Jaber is the only party who has harmed High West's business reputation.**

Finally, Plaintiffs cite reputational harm suffered because investor BMA has not been paid from the escrow assets held by G&L. ECF 17-1 at 40-41. Any reputational harm caused in the BMA lawsuit is, on the face of that Complaint, the result of Jaber's actions. As BMA alleges:

It is BMA's understanding that High West is owned by both Jaber and Mr. John Hall ("Hall"). Hall has authorized the payment of both money and securities to BMA, yet Jaber refuses to authorize the payment even though High West profited over $5 million in the transaction. That is, the monies and securities are sitting in an account of High West's escrow agent, the law firm of Greenberg & Lieberman ("G&L"). **Hall has authorized G&L to deliver the monies owed to BMA. Jaber refuses to authorize that payment**…. Because **Jaber is the only obstacle to payment to BMA**, it is forced to not only bring this action for breach of contract, but against Jaber personally for tortiously interfering with the underlying agreement.

ECF 17-33 (emphasis added).  In their MPI, Plaintiffs characterize this lawsuit as being caused by G&L's actions. ECF 17-1 p. 24. The BMA Complaint, itself, tells a much different story: "[w]hile Hall and G&L desire to release the shares, Jaber, again, is withholding his consent to release of the said shares. Jaber's refusal to give consent has resulted in BMA incurring damages in the value of the shares…." ECF 17-33.

For Plaintiffs, acting only through Jaber, to suggest that the BMA lawsuit constitutes reputational harm caused by G&L is disingenuous. As BMA alleges, "Jaber is the only obstacle to payment to BMA," and, similarly here, Jaber is the only cause of any alleged reputational harm to Plaintiffs. *Id.*[8]

## C.      The equities and public interest favor G&L.

The equities disfavor granting Plaintiffs' request for injunctive relief in three primary ways. First, Plaintiffs' delay in seeking emergency relief disfavors them on this factor. As this Court observed, a party's delay in requesting 'urgent' relief is a relevant factor for determining this factor of the preliminary injunction analysis. *Depu*, 2021 WL 4399528 at *5. Plaintiffs argue that G&L should have interpleaded these funds, at the latest, on November 26. ECF 17-1 p. 12. That deadline

---

[8] BMA is not the only former High West business partner to specifically identify Jaber as a wrongdoer harming High West's reputation. On February 27, 2026, Joseph Burke of Jade Gas Holdings filed a complaint with the Securities and Exchange Commission alleging that "Mr. Paul Jaber, Chairman and CEO of Nasdaq-listed BitBridge Capital Strategies (ticker symbol BTTL), has defrauded me by taking listed securities in [Jade Gas Holdings] that I pledged to Highwest Capital in exchange for a cash loan…." Exhibit D.

came and went, and Plaintiffs did not seek emergency relief. Instead, Plaintiffs initiated this action on December 13, 2025. *See generally* ECF 1. Despite the Complaint describing the risk of "irreparable injury to their reputation, goodwill, and business if the remedies of an injunction and accounting are not granted," Plaintiffs took no action to seek preliminary relief at that time. ECF 1 p. 27. Thereafter, Plaintiffs delayed another 3 months—94 days—to file this MPI with a sudden assertion that the emergency described in the Complaint was, in fact, an emergency. In the meantime, the parties engaged in substantial briefing on Plaintiffs' authority to maintain this suit and the arbitrability of these claims.[9] The only thing that changed about Plaintiffs' case between December 13 and March 17 was a substitution of counsel.[10] However, the strategic approach of a new lawyer is not a factual reality that merits injunctive relief. Viewed in this context, Plaintiffs' delay in seeking preliminary injunctive relief weighs against them on the balance of equities.

Second, Plaintiffs come to this Court seeking injunctive relief having acted inequitably. The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *United States v. Philip Morris, Inc.*, 300 F. Supp. 2d 61, 74-75 (D.D.C. 2004) (internal citation omitted). By excluding High West partner John Hall from this lawsuit—while simultaneously acknowledging Hall's 50% claim to these assets (ECF 1 at ¶ 11)—then asking this Court to use equitable powers to control those funds without Hall's involvement (let alone consent), Plaintiffs have acted in bad faith. As set forth in Hall's Motion to Intervene, Plaintiffs' requested injunctive relief "seek[s] an order

---

[9] Plaintiffs will undoubtedly argue that G&L's Maryland lawsuit concerning cryptocurrency theft is a change in condition during this time that justifies their sudden realization of the need for emergency relief. This argument is without merit on multiple grounds. First, that complaint was filed January 16, 2026, two months before the instant MPI. Second, Plaintiffs were aware of the Maryland lawsuit well in advance of filing this MPI. In fact, it forms a central part of Plaintiffs' Opposition to the Motion to Compel Arbitration, filed February 27. Third, as discussed in Part III.B., *supra*, the facts alleged in the Maryland lawsuit are wholly unrelated to High West's escrow assets.

[10] Plaintiffs also indicated they learned of Hall's intent to file a Motion to Intervene by March 17, suggesting that injunctive relief may have been requested to effectuate a change to the status quo before Hall could intervene.

depositing millions of dollars in shared assets into this Court's registry in an action that does not include Mr. Hall." ECF 18, p. 4-5. Likewise, the lawsuit Jaber exposed High West to in the BMA dispute further demonstrates Jaber's inequitable conduct in causing the harm he now seeks to recover from G&L. ECF 17-33. As BMA alleged in its claim against Jaber for tortious interference with contract, "instead of authorizing a simple payment and working with Hall and G&L to resolve any monetary issues, Jaber decided to launch an assault on both Hall and G&L…." *Id.* at pp. 1-2. Plaintiffs—acting through Jaber as a rogue partner—requests equitable relief related to the escrow assets while acting in bad faith relative to the disposition of the escrow assets. This fact strongly disfavors a finding that the balance of the equities weighs in Plaintiffs' favor.

Third, Plaintiffs are incorrect in arguing that "[n]either G&L nor any third party will be injured by placing the escrowed assets with the Court." ECF 17-1 at 41. As discussed above (and in detail in the Motion to Intervene, ECF 18), if Hall is not permitted to intervene in this case, Hall will obviously be injured by having the assets held pursuant to a lawsuit that does not include him. Further, as G&L identified in the Joint Status Reports, the majority of Safari Assets are encumbered. ECF 19, 23; *see also* Exhibit A at ¶ 8. These assets are pledged as collateral in deals in which High West is actively involved. *Id.* If those funds were liquidated to be placed in the Court's registry, they would no longer be accessible for collateral. An order liquidating those assets could expose High West, Jaber, Hall, **and G&L** to claims from parties relying on that existing collateral. Plaintiffs are correct, G&L would like to be rid of management of these assets. ECF 17-1, p. 35. However, G&L does not agree with Plaintiffs' haphazard process of ridding G&L of these assets, potentially exposing it to new claims in the meantime.

G&L agrees that "[t]here is little public interest at stake in a monetary dispute between two private companies," but the monetary dispute here is between Hall and Jaber, not High West and

G&L. *Sprint Solutions*, 2020 WL 136285 at *9. The public interest factor weighs against injunctive relief because it would not serve the public interest to legitimize Jaber's tactic of abusing the Court system to seize control over assets to which another party not named in this lawsuit has a verified interest. To reiterate the point above, the public interest cannot favor rewarding unclean hands.

**CONCLUSION**

For these reasons, Defendant Greenstein & DeLorme, LLC respectfully requests that the Court deny Plaintiffs' Motion for a Preliminary Injunction as having failed to demonstrate subject matter jurisdiction, a likelihood of success on the merits, a substantial likelihood of irreparable harm, a balance of the equities in their favor, and a public interest in their favor. G&L respectfully requests that the Court grant all other relief deemed appropriate.

Respectfully submitted,

**CARR MALONEY, P.C.**
Counsel for Defendant
Greenberg & Lieberman, LLC

By:  /s/ *Colin D. Neal*

Dennis J. Quinn, Esq., Bar No. 455793
Colin D. Neal, Esq., Bar No. 90002583
P. Mac McCullough, Esq., Bar No. 90037878
Carr Maloney, P.C.
Counsel for Defendant Greenberg &
Lieberman, LLC
2000 Pennsylvania Ave., NW, Suite 8001
Washington, DC 20006
Telephone: (202) 310-5500
Facsimile: (202) 310-5555
E-Mail: dennis.quinn@carrmaloney.com
E-Mail: colin.neal@carrmaloney.com
E-Mail: mac.mccullough@carrmaloney.com

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2026, the foregoing Defendant Greenberg & Lieberman, LLC's Opposition to Plaintiffs' Motion for Preliminary Injunction was filed through the Court's CM/ECF system, and served upon counsel of record.

By:  /s/ *Colin D. Neal*
Colin D. Neal