**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **HIGH WEST CAPITAL PARTNERS, LLC,** | * | |
| | * | |
| **and** | * | |
| | * | |
| **INTERNATIONAL LIQUIDITY, LLC** | * | **Case No. 1:25-cv-04335** |
| | * | |
| *Plaintiffs,* | * | |
| | * | |
| **v.** | * | |
| | * | |
| **GREENBERG & LIEBERMAN LLC,** | * | |
| | * | |
| *Defendant.* | * | |
| | * | |

### PLAINTIFFS' SECOND NOTICE OF SUPPLEMENTAL AUTHORITY

On June 10, 2026, Defendant John W. Hall served a foreign lawsuit on Paul Jaber, the sole member of Plaintiff High West Capital Partners, LLC ("HWCP"). Ex. A; Ex. C ¶4. Hall originally filed the lawsuit in Hong Kong on April 10, Ex. A, but did not effect service on Jaber until two months later. Hall's Hong Kong lawsuit is supported by a signed, notarized Affirmation in which Hall "solemnly, sincerely and truly affirm[ed]," Ex. B at 2, a number of statements that support Plaintiffs' pending Partially Opposed Motion for Preliminary Injunction, ECF No. 17, and contradict Hall's arguments in favor of his pending Motion to Intervene, ECF No. 18.[1] Plaintiffs now bring these subsequent facts to the Court's attention.

<u>*First*</u>: Hall's Hong Kong lawsuit seeks to restrain the very assets that are the subject of this Court's order requiring Defendant Greenberg & Lieberman LLC ("G&L") not to dissipate

---

[1] The Affirmation makes other claims and arguments that are either irrelevant to the instant litigation, factually untrue, or both. *See* Ex. B. Plaintiffs in this filing only discuss the Affirmation's concessions most salient to the pending motions.

Plaintiffs' assets.  On March 30, 2026, the Court ordered that G&L "is prohibited from dissipating any assets in the Safari Asia Limited accounts ending in x0014, x0214, and x0314."  ECF No. 24 at 2.  Eleven days later, on April 10, 2026, Hall filed suit in Hong Kong seeking to restrain Jaber—"whether by himself, servants and/or agents or otherwise howsoever"—from giving instructions to Safari Asia regarding "the sale, purchase, transfer, or dealing of any assets" in (among other things) those same three Safari Asia accounts.  Ex. A at 2-3.[2]  Four days later, on April 14, Hall filed in this Court his reply brief in support of his intervention motion, ECF No. 31; that filing does not mention the Hong Kong lawsuit.  Hall seeks a hearing in Hong Kong regarding his lawsuit on July 9, 2026.  Ex. A at 2.  The Court has not yet ruled on the portion of Plaintiffs' preliminary injunction motion that would require G&L to place the assets in these Safari Asia accounts into the Court's neutral hands.

***Second***:  The Affirmation confirms Hall's belief that G&L—through its nominee, Chanelle Sturge-Woods—controls, at a minimum, Safari Asia x0214.  Ex. B ¶11 (claiming Sturge-Woods is shareholder and director of High West & Co.), ¶15 (stating that Safari Asia x0214 is a High West & Co. account).  Hall's position is consistent with that of Plaintiffs, who have put forth substantial documentary evidence proving G&L's long-time dominion over Safari Asia x0214 and other Safari Asia accounts.  *See* ECF Nos. 30 at 12-13; 32; 32-1.

***Third***:  Hall's Affirmation confirms that he is not a member of HWCP.  To the Hong Kong court, Hall affirmed that "I am neither shareholders nor directors" of HWCP or certain other non-party entities.  Ex. B ¶12.  Hall's Affirmation undercuts his framing in this Court that the Nevis Proceeding could result in a declaration that Hall is a "member" of HWCP.  *See* ECF No. 18 at 6 (Hall Motion claiming that "Mr. Hall has filed an action in the courts of Nevis . . . to obtain a

---

[2] Page references are to the ECF page number, not to the number at the bottom of the page.

declaration that he is a member of the company"); ECF No. 25 at 9 (Plaintiffs' Opposition pointing out that the Nevis action makes no such request).  In addition to disclaiming membership in HWCP, the Affirmation's description of the Nevis Proceeding says nothing about Hall seeking a declaration that he is a "member" of HWCP.  Ex. B ¶34.

*Fourth*:  Hall's Affirmation states that "there is no dispute between Mr. Jaber and myself that our vehicles should be wound down and their assets distributed equitably between us.  Both of us are working toward this objective."  Ex. B ¶40(3).  Hall went on to claim that "[t]he principal dispute between Mr. Jaber and myself is whether he should be allowed to withdraw a significant amount of funds pending the accounting exercise between us as equal partners."  Ex. B ¶40(4).[3] Thus, if his Affirmation is to be taken at face value, Hall's interests do not diverge from HWCP's for purposes of pressing a claim against G&L in the instant case, thereby undermining any professed need for him to intervene.

*Fifth*:  Hall's Affirmation makes claims in Hong Kong about an allegedly fabricated document that he apparently did not feel appropriate to make in this forum.  Here, in opposition to Hall's intervention motion, Plaintiffs discussed and appended the HWCP Amended Operating Agreement, dated April 1, 2025, that proves Jaber is HWCP's sole member.  *See* ECF Nos. 25; 25-1.  Hall's reply brief does not even mention the Amended Operating Agreement.  *See* ECF No. 31.  The omission is all the more striking because the Amended Operating Agreement also featured prominently in Plaintiffs' opposition to G&L's joinder motion, which provided

---

[3] Hall's Affirmation does not advise the Hong Kong court of the separate federal case in the U.S. District Court for the Southern District of Florida in which HWCP and Jaber have sued Hall for civil theft, conversion, and breach of contract, or of Hall's attempts to intervene in the instant case. In this Court, six days after Hall signed the Affirmation, Hall alleged—without a supporting declaration—that Jaber had the "sole aim of using the legal system to divest Hall and consolidate control over High West's assets."  ECF No. 31 at 5.

documentary evidence showing that G&L drafted the Amended Operating Agreement. *See* ECF Nos. 9 at 10-16; 9-11.[4]  But in Hong Kong, Hall's Affirmation claims that Jaber fabricated the Amended Operating Agreement, and further claims that Hall never was aware of it until after litigation commenced.  Ex. B ¶¶29, 39(3), 41(1).  The Affirmation was made "solemnly" and "sincerely" but apparently not under penalty of perjury as a declaration would have to be made in this Court.  *See* 28 U.S.C. § 1746; ECF No. 30 at 11-14.  In any event, documentary evidence proves both that G&L drafted the Amended Operating Agreement naming Jaber as HWCP's sole member and that Hall contemporaneously knew about it.  *See* Ex. D; Ex. E.  *See also* ECF Nos. 9 at 10-16; 9-11.  Any litigation position to the contrary is baseless.

For these additional reasons, Plaintiffs request that the Court grant Plaintiffs' Partially Opposed Motion for Preliminary Injunction, ECF No. 17, and deny Hall's Motion to Intervene, ECF No. 18.

Respectfully submitted,

*/s/Thomas P. Windom*
Thomas P. Windom (D.C. Bar No. 502131)
Fiona Carroll (D.C. Bar No. 90009677)

Heaphy, Smith, Harbach & Windom, LLP
1701 Pennsylvania Avenue NW, Suite 200
Washington, D.C. 20006
(202) 739-8490
twindom@hshw.com
*Counsel for Plaintiffs*

---

[4] G&L's joinder reply brief took barely more notice of the Amended Operating Agreement, stating without elaboration that G&L "contests" Plaintiffs' "allegation that Lieberman drafted the Amended Operating Agreement."  ECF No. 14 at 9.