**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HIGH WEST CAPITAL PARTNERS, LLC, *et al.*, Plaintiffs, v. GREENBERG & LIEBERMAN, LLC, *et al.*, Defendants. | Civil Action No. 25-4335 (EGS) |

**MEMORANDUM OPINION**

Pending before the Court is Intervenor John W. Hall's ("Mr. Hall") Motion to Stay. *See* Mot. to Stay, ECF No. 42.[1] Defendant Greenberg & Lieberman, LLC ("G&L") consents to the motion. *See* Def.'s Resp. & Consent to Intervenor John Hall's Mot. to Stay Proceedings, ECF No. 43. Plaintiffs have filed an opposition, *see* Pls.' Opp'n to Intervenor John W. Hall's Mot. to Stay ("Opp'n"), ECF No. 44; and Mr. Hall has filed a reply, *see* Reply, ECF No. 45.

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

Upon careful consideration of Mr. Hall's motion, the opposition and reply thereto; the applicable law; and for the reasons discussed below, the Court **GRANTS** Mr. Hall's Motion to Stay.

## I. Background

This lawsuit is one of four related to a partnership dispute between Mr. Hall and Paul N. Jaber ("Mr. Jaber") regarding the ownership of High West Capital Partners LLC ("High West"), a Nevis Limited Liability Company. Mot. to Stay, ECF No. 42-1 at 8-10.[2] There is no dispute that Mr. Hall has a 50% interest in High West's profits and losses. *See* Opp'n to Mot. to Intervene, ECF No. 25 at 14 n.2. But whether Mr. Hall is a member of or has an ownership interest in High West is in dispute. Mem. Op., ECF No. 41 at 2.

In the instant case, Plaintiffs High West and International Liquidity, LLC filed a Complaint against G&L, Plaintiffs' escrow agent, on December 13, 2025, requesting a declaratory judgment

[2] "[T]his action involves several limited liability companies formed under Nevis law, including International Liquidity, LLC and Long GF1, LLC, but ultimately the business was run through High West. International Liquidity and Long GF1 were created to hold certain assets acquired out of High West's business. Mr. Hall asserts that he is entitled to 50% of the assets of High West, International Liquidity, and Long GF1. However, for convenience, we refer to these collectively as High West." Mot. to Stay, ECF No. 42-1 at 5 n.1.

regarding whether their escrow agreement contains valid and enforceable arbitration agreement and alleging breach of fiduciary duty of loyalty. *See* Compl., ECF No. 1. The Complaint alleges that Mr. Hall is a "relevant person . . . not named as defendant[]" due to the Profit Share Agreement between Mr. Hall and Mr. Jaber, but it also alleges that Mr. Hall does not own any High West membership interests and is not a manager. *Id.* ¶ 11. Mr. Hall states that Mr. Jaber brought the lawsuit without Mr. Hall's knowledge or consent. Mot. to Intervene, ECF No. 18 at 8. The Complaint further alleges that there is a deadlock between Mr. Hall and Mr. Jaber regarding the disbursement of escrow funds held by G&L and that the funds will need to be made the subject of an interpleader action to determine Mr. Hall's and Mr. Jaber's "rights." Compl., ECF No. 1 ¶ 11. Plaintiffs ask the Court to issue a Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) which, among other things, finds that the putative escrow agreement does not contain a valid and enforceable arbitration agreement because it was signed by Mr. Hall, who "has never been a Manager, Member, or Owner of any Membership Interests of [High West] and had no actual or apparent authority to sign on behalf of [High West]." *Id.* ¶ 38.

The second lawsuit, filed on December 29, 2025, was brought by High West and Mr. Jaber against Mr. Hall in United States District Court for the Southern District of Florida alleging:

(1) civil theft; (2) conversion; and (3) breach of contract. *See* Compl., *High West Cap. Partners, LLC v. Hall*, No. 0:25-cv-62678-AHS (S.D. Fla. Dec. 29, 2025) (the "Florida Proceeding"). On February 27, 2026, Mr. Hall filed a motion to stay those proceedings pending the resolution of the third lawsuit described immediately below. *See* Mot. to Stay Proceedings Or, in the Alternative, to Dismiss The Compl. For Lack of Subject Matter Jurisdiction & Failure to State a Claim, *High West Cap. Partners, LLC v. Hall*, No. 0:25-cv-62678-AHS (S.D. Fla. Feb. 27, 2026). That motion was granted on September 30, 2026. Order, No. 0:25-cv-62678-AHS (S.D. Fla. Sep. 30, 2026).

On February 7, 2026, Mr. Hall filed a Claim Form and Statement of Claim in the Eastern Caribbean Supreme Court, Saint Christopher and Nevis, Nevis Circuit (the "Nevis Proceeding"), against Mr. Jaber, High West, International Liquidity, and Long GF1 Partners, LLC seeking a declaration regarding Mr. Hall's interests in the Defendant LLCs. *See generally* Ex. I to Opp'n, ECF No. 44-9. Mr. Hall filed an Amended Claim Form and Statement of Claim on July 2, 2026, *see id.*; and the Defendants filed an Amended Answer on July 31, 2026, *see generally* Ex. J to Opp'n, ECF No. 44-10.

On April 10, 2026, Mr. Hall initiated a proceeding against Mr. Jaber in Hong Kong ("Hong Kong Proceedings"), the location of High West Assets at a bank named Safari (Asia ) Ltd. *See* Mot.

to Stay, ECF No. 42 at 10. In the Hong Kong Proceedings, Mr. Hall states that he "seeks injunctive relief, prohibiting Mr. Jaber from unilaterally removing funds from the Safari account pending the resolution of the Nevis Proceeding." *Id.*

In the pending motion, Mr. Hall moves to stay the instant case pending the resolution of the Nevis Proceeding. *See id.* at 1.

## II. Legal Standard

A court's authority to stay proceedings stems from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Pursuant to this authority, "[a] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere," *Hisler v. Gallaudet* Univ., 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (citing *Landis*, 299 U.S. at 254)); including pending the outcome of foreign litigation, *Detroit Int'l Bridge Co. v. Gov't of Can.*, 78 F. Supp. 3d 117, 120 (D.D.C. 2015).

> Courts weighing a stay based on foreign litigation apply a multi-factor balancing test, considering: the similarity of the parties, 'the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the

> connection between the litigation and the foreign jurisdiction.

*Id.* (quoting *LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd.*, 919 F. Supp. 2d 17, 24 (D.D.C. 2014). "This list is not exhaustive, and a district court should examine the 'totality of the circumstances.'" *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (quoting *Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 900 (7th Cir. 1999)). The party seeking the stay has the burden of showing that the stay is needed and warranted. *Landis*, 299 U.S. at 255.

"In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun Alliance Ins. Co. of Can.*, 466 F.3d at 94; *see also Brinco Mining Ltd. v. Fed. Ins. Co.*, 552 F. Supp. 1233, 1240 (D.D.C. 1982). "For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun Alliance Ins. Co. of Can.*, 466 F.3d at 94 (citing *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).

## III. Analysis

### A. The Similarity of the Parties and the Similarity of the Issues

#### 1. Similarity of the Parties

Mr. Hall, High West, and International Liquidity are parties in both actions. *See generally* Dkt., *High West Cap. Partners, LLC v. Greenberg & Lieberman, LLC*, No. 1:25-cv-4335 (D.D.C. Dec. 13, 2025); Ex. I to Opp'n, ECF No. 44-9. Mr. Jaber is not a named party in the instant case, but the Complaint alleges that he is the sole manager and owner of 100% of the membership interests of the two plaintiff LLCs, and so he is clearly involved in the instant case. *See* Compl., ECF No. 1 ¶¶ 8, 9. Mr. Jaber is a party in the Nevis Proceeding. *See* Ex. I to Opp'n, ECF No. 44-9. The two remaining parties—G&L in the instant case and Long GF1 Partners in the Nevis Proceeding—are parties only in each respective case. *See generally* Dkt., *High West Cap. Partners, LLC v. Greenberg & Lieberman, LLC*, No. 1:25-cv-4335 (D.D.C. Dec. 13, 2025); Ex. I to Opp'n, ECF No. 44-9.

"'[T]he relevant test is whether the parties are substantially similar,'" not whether they are "'identical.'" *Sunset Equities Ltd. v. Donald J. Urgo & Assocs., LLC*, 22 Civ. 8857, 2024 WL 1195414, at *3 (S.D.N.Y. Mar. 20, 2024) (quoting *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12 CIV. 7249 PAE, 2013 WL 2531277, at *3 (S.D.N.Y. June 10, 2013)). The

parties in the instant case and in the Nevis Proceeding are not identical, but since there is only one party in each case that is not a party in the other case, the Court concludes that the parties are substantially similar. Accordingly, this factor weighs in favor of a stay.

**2. Similarity of the Issues**

In the instant case, Plaintiffs seek to have the Court rule that the escrow agreement with G&L does not contain a valid and enforceable arbitration agreement because it was signed by Mr. Hall, who they allege "has never been a Manager Member, or Owner of any Membership Interests of [High West] and had no actual or apparent authority to sign on behalf of [High West]." Compl., ECF No. 1 ¶ 38. To determine whether the arbitration agreement is valid and enforceable, the Court will "need to determine whether or not Mr. Hall has a membership interest in [High West]." Mem. Op., ECF No. 41 at 18; *see also* Opp'n, ECF No. 44 at 17-20 (arguing that this "Court is competent and well positioned to determine whether [Mr.] Hall is a Member of HWCP").

Plaintiffs contend that the issues in this lawsuit are not similar because the instant case was brought to hold G&L accountable for alleged breaches of fiduciary duty, to secure the assets with the Court, and for the Court to eventually oversee the appropriate division of assets. *Id.* at 14-15. On the

other hand, "[t]he central issues in the Nevis proceeding are whether [Mr.] Hall is entitled to financial or injunctive recovery against Mr. Jaber." *Id.* at 15. Plaintiffs contend that Mr. Hall has not asked the Court in the Nevis Proceeding to determine whether he is a member of High West. *Id.* at 15. Plaintiffs assert, among other things, that Mr. Hall has only asked for a declaration from the Nevis Court "that [Mr.] Jaber 'holds 50%' of [High West and International Liquidity] shares 'on trust' for [Mr.] Hall." *Id.* at 15 (citing Ex. I to Opp'n, ECF No. 44-9 at 3-4).

The Amended Claim Form and Statement of Claim filed July 31, 2026 seeks, inter alia, the following relief:

> i. A declaration that the 1st Defendant ("Mr Jaber") holds 50% of the High West Capital Shares (as defined in the Statement of Claim) on trust for the Claimant ("Mr Hall") absolutely.
>
> ii. A declaration that Mr Jaber holds 50% of the International Liquidity Shares (as defined in the Statement of Claim) on trust for Mr Hall absolutely.
>
> iii. A declaration that Mr Jaber holds 50% of the Long GF1 Shares (as defined in the Statement of Claim) on trust for Mr Hall absolutely.

Ex. I to Opp'n, ECF No. 44-9 at 2. This language is identical to the original Claim Form and Statement of Claim filed February 26, 2026. Ex. K to Opp'n, ECF No. 44-11 at 23.

To support his claims for relief, Mr. Hall alleges the following: (1) "Mr. Jaber holds 50% of the High West Capital Shares as nominee or bare trustee for Mr. Hall," Ex. I to Opp'n, ECF No. 44-9 ¶ 19, Ex. K to Opp'n, ECF No. 44-11 ¶ 19; (2) "Mr. Jaber holds 50% of the International Liquidity Shares as nominee or bare trustee for Mr. Hall," Ex. I to Opp'n, ECF No. 44-9 ¶ 31, Ex. K to Opp'n, ECF No. 44-11 ¶ 31; and (3) "Mr. Jaber holds 50% of the Long GFI Shares as nominee or bare trustee for Mr. Hall," Ex. I to Opp'n, ECF No. 44-9 ¶ 42, Ex. K to Opp'n, ECF No. 44-11 ¶ 42.

Mr. Hall's expert on Nevis law, Frank Walwyn ("Mr. Walwyn"), avers in his declaration that Mr. Hall seeks "declaratory relief regarding the membership and ownership of the Nevis Companies." Decl. of Frank E. Walwyn ("Walwyn Decl."), Ex. K to Opp'n, ECF No. 44-11 ¶ 15(a).[3] Mr. Walwyn's declaration is based on his review of the original Claim Form and Statement of Claim, but as explained above, the relevant language is identical in both the original and the amended claim. Plaintiffs have not provided expert testimony to rebut Mr. Walwyn's explanation of the relief Mr. Hall seeks. The Court therefore accepts Mr. Walwyn's description of Mr. Hall's claims under

[3] The declaration was submitted in the Florida Proceeding and provided by Plaintiffs as an attachment to their Opposition briefing. *See* Ex. K to Opp'n, ECF No. 44-11.

Nevis law. *Cf.* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

The same issue is therefore being litigated in both cases—specifically whether Mr. Hall is a member of or has an ownership interest in High West. The instant case does involve additional issues, but whether the Court reaches those issues or they go to arbitration depends on the answer to the threshold question of whether Mr. Hall is a member of or has an ownership interest in High West. Staying the instant case will not prevent this Court from considering the questions of whether there is a valid arbitration agreement and whether G&L breached their fiduciary duties, but it will "permit an underlying dispute to be resolved first." *Ole Media Mgmt., LP*, 2013 WL 2531277, at *4. For all these reasons, this factor weighs in favor of a stay.

**B. The Order In Which the Actions Were Filed**

The instant case was filed on December 13, 2025, and the Nevis Proceeding was filed about two and a half months later on February 26, 2026. Plaintiffs argue that this factor weighs against a stay for several reasons. First, they claim that Mr. Hall "suggest[s] that he could not have known until the Complaint was filed that Plaintiffs would contend he is not a member of HWCP." Opp'n, ECF No. 44 at 23. However, Plaintiffs

misrepresent Mr. Hall's argument: Mr. Hall argues that he brought the Nevis proceeding because Mr. Jaber brought this action without Mr. Hall's knowledge or consent. Mot. to Stay, ECF No. 42-1 at 18. Second, they argue that while Mr. Hall contends that the Nevis Proceeding has a clear end date, he does not provide one. Opp'n, ECF No. 44 at 24. Mr. Hall cites the Walwyn declaration which states "[i]n theory, the Nevis Claim could be tried in less than a year. However, if the defendants mount any threshold challenges to the Nevis Claim, this could delay its prosecution," Walwyn Decl., ECF 44-11 ¶ 9(f); and points out that defendants have answered the Amended Statement of Claim in the Nevis Proceeding, *see* Reply, ECF No. 45 at 16. Finally, Plaintiffs argue that while the Nevis litigation is in its "incipiency," several motions are fully briefed and pending in the instant case. Opp'n, ECF No. 44 at 24-25.

This factor "does not turn exclusively on the sequence in which the cases were filed, 'but rather [involves a comparison] of how much progress has been made in the two actions.'" *Dunkin' Donuts Franchised Rests. LLC v. Rijay, Inc.*, No. 06 Civ. 8237(WCC), 2007 WL 1459289, at *5 (S.D.N.Y. May 17, 2007) (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)). Defendants filed an Answer in the Nevis proceeding on July 31, 2026. *See generally* Ex. J to Opp'n, ECF No. 44-10. The parties have provided no information about

whether a scheduling order has been issued in that case. Since Defendants did not mount a threshold challenge, however, the resolution of the case is not expected to be delayed. *See* Walwyn Decl., ECF 44-11 ¶ 9(f). Mr. Walwyn estimates that the claim could be tried in less than a year, but Mr. Walwyn does not indicate when that "year" commences. Mr. Walwyn's declaration is dated February 27, 2026 and was based on his review of the initial Claim Form and Statement of Claim, which was filed February 2, 2026. *See generally id.* As stated above, Mr. Hall filed an Amended Statement of Claim on July 2, 2026. See Ex. I to Opp'n, ECF No. 44-9.

In the instant case, no Answer has been filed and no scheduling order has been issued. While Plaintiffs assert that several motions are fully briefed and pending before the Court, this statement is not accurate. Since Mr. Hall is now a party to the case, supplemental briefings will be necessary.

The Court concludes that this factor is neutral because there is no evidence that a scheduling order has been issued in the Nevis Proceeding where an Answer has been filed, and because in the case before this Court where no Answer has been filed, the pending motions will need supplementary briefings since Mr. Hall is now a party to the case.

**C. The Adequacy of the Alternative Forum**

Plaintiffs argue that this factor weighs against a stay for several reasons. First,

> [e]ven accepting [Mr.] Hall's characterization that 'the heart of this case' is a partnership dispute . . . the very origin of Jaber and Hall's obligations to each other with respect to HWCP (including the 50/50 profit-and-loss split) is the R[ofit] & L[oss] Agreement, which affirmatively states that it 'will be governed by United States law.'

Opp'n, ECF No. 44 at 25. However, the 50/50 profit and loss split arises out of High West's profits and losses, which Mr. Jaber and Mr. Hall "worked to create, establish and market," Ex. F to Opp'n, ECF No. 44-6 at 2; and any partnership dispute regarding High West is governed by Nevis law.

Plaintiffs point out that Nevis law has nothing to do with the alleged breach of fiduciary duties they have alleged against G&L in the instant matter. Opp'n, ECF No. 44 at 25. But that is beside the point because the issue is not whether the Nevis court should consider the alleged breach of fiduciary duties claims, but whether the instant case should be stayed pending the resolution of the "partnership dispute." Finally, Plaintiffs assert that "whether dissolution of [High West] is reserved to a Nevis court is beside the point because Hall's professed desire to dissolve HWCP there does not justify a stay here." *Id.* at 26.

However, whether the Nevis court dissolves High West and whether a stay is justified in the instant case are different issues.

The Court is persuaded that this factor weighs in favor of a stay for several reasons. First, High West was organized under The Nevis Limited Liability Company Ordinance 1995, as amended, Ex. C to Opp'n, ECF No. 44-3. Accordingly, Nevis law applies to any partnership dispute involving High West. Second, Plaintiffs have failed to rebut Mr. Hall's expert's averments that Mr. Hall seeks "declaratory relief regarding the membership and ownership of the Nevis Companies," Walwyn Decl., ECF No 44-1 ¶ 15(a); that "[a] Nevis Court is the most competent court to decide issues related to Nevis LLCs," *id.* ¶ (d); and that "[l]itigants to proceedings in Nevis are afforded due process," *id.* ¶ (e).[4] For all these reasons, a Nevis court is an adequate forum for resolving the partnership dispute. Accordingly, this factor weighs in favor of a stay.

**D. The Potential Prejudice to Either Party**

Plaintiffs argue that "[a]n indefinite stay of these proceedings in favor of the Nevis Proceeding—which has barely

[4] Mr. Hall relies on the Walwyn Declaration to support his arguments relevant to the comity analysis. Mot., ECF No. 42-1 at 20 & n.5. This declaration was submitted in support of Mr. Hall's Motion to Stay in the Florida Proceeding. *Id.* at 20 n.5. Plaintiffs do not object to Mr. Hall's reliance on the Walwyn Declaration; they instead argue that the declaration "sabotages" Mr. Hall's motion. *See* Opp'n, ECF No. 44 at 24.

begun, has no realistic timetable for conclusion, and on its face does not portend resolution of any issue material to this case—would severely prejudice Plaintiffs." Opp'n, ECF No. 44 at 26. The Court rejects each of these arguments. First, the stay is not indefinite. Rather, it will be lifted once the Nevis Proceeding has been resolved. *See Hulley Enter. Ltd. v. Russian Federation*, 502 F. Supp. 3d 144, 152 n.9 (D.D.C. 1996) (rejecting the argument that the stay would amount to being indefinite because "the conclusion of the stay has a clear end date pending resolution of" proceedings in a foreign court) (citation modified). Second, as explained above, the Nevis Proceeding has not just "barely begun;" rather, an Answer has been filed. Third, Plaintiff's assertion that the Nevis Proceeding "has no realistic timetable for conclusion" is unsupported by the record in the case. The only evidence is that the Nevis Proceedings could take a year to resolve, although as the Court noted above, the starting point for that year is not clear. Finally, the Court has already rejected Plaintiffs' assertion that they would be prejudiced by the stay because "the Nevis Proceeding . . . on its face does not portend resolution of any issue material to this case." Opp'n, ECF No. 44 at 26. Rather, the Nevis Proceeding will resolve the threshold question in the instant case–whether Mr. Hall is a member of or has an ownership interest in High West.

Plaintiffs also argue that they would be prejudiced by a stay because it "would result in over $8 million sitting in purgatory in the Court's registry and another $27 million marooned in overseas accounts controlled by G&L, the defendant here accused of serious breaches of fiduciary duty which all parties agree has no interest in the assets it holds in escrow." Opp'n, ECF No. 44 at 26. Plaintiffs' characterizations ignore that the $8 million is already in the Court's registry based on their own request and with G&L's consent. And in their Opposition to Mr. Hall's Motion to Intervene, Plaintiffs argued the opposite: "[a]ny of [HW's] assets that can be moved into the Court's registry can just as easily be moved out. This is not difficult." Opp'n to Mot. to Intervene, ECF No. 25 at 20. If Plaintiffs lack access to another $27 million pending the resolution of the Nevis Proceeding, it was they who chose to file the lawsuit without including Mr. Hall, which he states prompted him to file the Nevis Proceeding and whom the Court has ruled is entitled to intervene as of right. *See* Mem. Op., ECF No. 41.

Not staying the instant case could, however, prejudice Mr. Hall because of the possibility of inconsistent determinations by this Court and the Nevis Court on the threshold question of whether Mr. Hall is a member of or has an ownership interest in High West.

For all these reasons, the Court concludes that this factor weighs in favor of a stay.

**E. The Convenience of the Parties**

Plaintiffs argue that this factor weighs against a stay because Nevis is not a convenient forum to resolve this lawsuit. Opp'n, ECF No. 44 at 28-29. However, the issue is not whether the instant case should be resolved by a Nevis court, but whether it should be stayed pending resolution of the threshold question. Plaintiffs cannot contend that litigating in Nevis is inconvenient as they chose to incorporate under the laws of Nevis. *Cf. Louis Vuitton N. Am., Inc. v. Schenker S.A.*, No. 17-CV-07445 (DLI) (PK), 2019 WL 1507792, at *9 (E.D.N.Y. Mar. 31, 2019) (observing that Plaintiffs "cannot be prejudiced by [their] own choice of forum").

**F. The Connection Between the Litigation and the United States and the Foreign Jurisdiction**

Plaintiffs argue that this factor counsels against a stay, stating that "[t]his lawsuit has little to no connection to Nevis and a substantial connection to the United States," pointing out that: (1) G&L does not operate in the United States and the alleged fiduciary breached occurred in the United States; (2) the Partnership and Loss Agreement between Hall and Jaber is governed by United States law; and (3) High West does

not conduct its primary business functions in Nevis. Opp'n, ECF No. 44 at 29.

The Court is persuaded that this factor weighs in favor of a stay because the threshold question in the instant case is whether Mr. Hall is a member of or has an ownership interest in High West. Since that question will be determined under Nevis law, it is inaccurate to characterize the instant case as having "little or no connection to Nevis." The Court therefore rejects Plaintiffs' argument. Furthermore, staying the instant case pending the determination of that issue under Nevis law in the Nevis Proceeding is consistent with principles of international comity since High West was incorporated under Nevis law. *See Royal & Sun Alliance Ins. Co. of Can.*, 466 F.3d at 94; *Detroit Int'l Bridge Co.*, 78 F. Supp. 3d at 122 (observing that "[p]rinciples of international comity weigh heavily in favor of a stay particularly since [Plaintiff] seeks a decision in a U.S. court of its rights under Canadian law").

## IV. Conclusion

Based on the Court's examination of the totality of the circumstances, the Court concludes that a stay is warranted for the reasons explained above, and the Court **GRANTS** Mr. Hall's Motion to Stay, ECF No. 42.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**September 30, 2026**